The first case today is 151495, United States v. Lamar Young. Mr. McCall. Thank you, Your Honor. Pleasure to see you this morning. May it please the Court, my name is Ed McCall. I represent Lamar Young. I was court appointed in the District Court to represent Lamar and it was a pleasure to do so. He's obviously admitted to serious crimes and as a result of evidence that was seized at the time of his arrest, following statements he made in clear violation of Miranda, his sentence had to include consecutive mandatory minimum sentences. This appeal focuses on what we think was a clear case of an illegal entry in search of the residence where he was found on March 11, 2014, leading to the conviction for that second offense, which resulted in a second mandatory minimum sentence of five years, which had to be served consecutively. Mr. Young pleaded guilty conditionally so that we could take this appeal to challenge what we think was a plainly mistaken ruling on clear legal and factual errors with respect to the search. On March 11, 2014, the six agents were armed with an arrest warrant from Mr. Young and the evidence showed that they went out searching for him at a series of at least four different locations and that's how they described it and it's how the government described it in examining its witnesses at the suppression hearing, that they were out searching for Young. It was really only after the evidence was concluded that the government contended and no agent had testified that when they entered the fourth of the four apartments they went to that night, it was in anybody's mind that maybe they were going to a place that might be Mr. Young's residence and that therefore the entry might be permitted under Peyton v. New York, a U.S. Supreme Court decision. In fact, the evidence was, we think, quite clear that the agent's theory was they had consent to enter the Coleman apartment, the fourth apartment they went to on Walnut Street. Before you get there, why wasn't it reasonable for the government agents, having exhausted the other possibilities as to where he would be? He seems to have had a series of girlfriends and spent the night with the various of them and so the police are told that place one, no, he's not here. Maybe he's at place two and so on and so forth until they come to place four and in fact two of the officers know that he had had a prior relationship with this woman, had been in residence in the sense of living with her for a while and there was now test evidence that he had taken up with her again. What's unreasonable about the officers looking at place four for him? Yes, Your Honor, and there's two different issues there. Was it unreasonable to go to place four, that would be one question, and the second would be was it lawful to enter it without permission or consent before any confirmation that he was there? And I wouldn't contend that going there and asking whether he was there was unreasonable, nor would it matter whether they went there and asked that he be there because knocking on the door of any house and asking whether somebody is present isn't an illegal search under probably any circumstances. I should... Then I don't understand your argument. Yes, Your Honor, the government contends in its brief that the lower court found that the officers had a sufficient basis to believe that Mr. Young was resident and present at the Walnut Street apartment when they went there. Neither the magistrate judge nor the district court made that finding. They made the finding that after Officer Rostrom entered the apartment and interrogated the principal resident, Ms. Coleman, and she said he's here, then they had a sufficient basis to enter the apartment, but they were already inside. Assuming that that's right and that we have to read the magistrate's finding as dependent on information gleaned after they crossed the threshold. Nonetheless, we can affirm on an independent ground, just looking at the record and the facts, if we discount that fact that they crossed the threshold and got information after the threshold, why isn't the evidence that the police had prior to the crossing of the threshold sufficient to support a conclusion that they had a reason to believe that he was both resident and present? Yes, Your Honor. They had no information that he was present and resident. But why? Okay. The testimony from Officer Rostrom, who was the only one who had any information as to why they went there. Officer Poppe said, I don't know why we went there. Officer Mishra said, I don't know why we went there. Officer Rostrom was the only one who had any information as to why they went there. His testimony, which is summarized in detail in our brief, as to why they went there is massively confusing. It's not clear where he bumped into Ms. Webster first. It sounded like it was either the first, the second, or the third. I understand where you're going with this, which is questioning whether they actually had any belief at all. But I'm asking a different question. I think Judge Lynch was trying to get a similar question, too. Put aside what the record shows about their subjective mental state, the officers when they arrived. Objectively, does the information that the record shows was conveyed to officers by the various people that they encountered and by the record checks that they had done constitute what could be a reason to believe that he was resident or present, or is your position that no, that evidence simply could never be enough? Yes, Your Honor. The evidence was insufficient. Okay. Why? Because all that they had, all that any of them had, and only Officer Rostrom claimed to have it, was that Ms. Webster at some point in the search said if you didn't find him at three places, he must be back with Jen and he's sometimes there. And why is that not enough to show that he's resident? I mean, among other things, Your Honor, when we moved to reconsider, the government took the position that Ms. Webster wasn't credible. But that aside, Your Honor, that's not sufficient because the decisions of this court, including and where I'll hold that kind of information, standing alone, isn't sufficient. It also is illogical in this case. The agents were out looking for Kayla Davidson and the defendant. They expected to find the two of them together. That was the information they had that was the most recent information they had, and they had no information that would lead them to think that that premise that they were operating on for several hours that night was mistaken. They hadn't found Mr. Young, but they also had never seen or talked to Ms. Davidson that night. Officer Rostrom said specifically they didn't talk to her that night. So to draw on inference because somebody else, well, if you didn't find him at three places, he must not be with Davidson anymore, he must be with Jen Coleman, that doesn't make any sense at all in light of what they did know, which was that they were looking for two people and they hadn't found either of them. The evidence in this case showed clearly they were going to go to every place they had any reason to suspect he might be. In fact, that's what the magistrate said when we got to argument. He actually said, I don't think the government would contend they thought it was his residence. He'd say they had a reason to think he'd be there. They did have a reason to think he might be there, but not a sufficient basis to believe it was his residence and that he was present at that time. What do we do, counsel? Counsel? Yes, please stop. What do we do with the fact that an officer outside, not one of the officers going up the staircase, saw the defendant in the window of the apartment being searched? Isn't it inevitable that even if the two officers had not crossed the threshold and come down the stairs, he would have said, I saw the defendant in the apartment, and that would have been sufficient? It's an excellent question, Your Honor, and I apologize if I didn't catch on with what you were trying to ask. Please accept my apology. With all due respect, Your Honor, I think the evidence with respect to that observation, which the government didn't rely on below, was fairly clear if the evidence is read closely, that when at least two officers entered initially at the other end of the building and get into the apartment at the back of the building away from the street, that caused the folks in the bedroom, Ms. Coleman and Mr. Young, Ms. Coleman went out and interrupted and intercepted the police officers out front. Officer Michaud was outside. He says he saw the defendant at the window. The reasonable inference is he went to look out the window when Ms. Coleman went to talk to the officers who had come into her apartment, and any doubt about that is allayed in a footnote in my reply brief by Officer Michaud, the outside officer's testimony, that exactly what he saw is someone opened the blinds, he said it was the defendant, and seconds later he saw the flashlights of the other officers in the bedroom pointing out that it was the defendant. So he wouldn't have looked out the window if they hadn't crossed the threshold, and there's no evidence to the contrary. I think the record is really quite clear on that, Your Honor. Thank you. Thank you, Your Honor. Again, I apologize for not catching your question. Thank you, ma'am. Good morning, Your Honors. May it please the Court, Renee Bunker on behalf of the United States. We submit that the proper test is reasonable belief based on the Supreme Court's use of that phrase, which as the Court knows is less than a preponderance of the evidence. Well, do we really need to get into the debate about whether reasonable belief is equivalent to probable cause? No. In this case, I think as the lower court, the facts here would also rise to probable cause. But to the extent there's any debate, it's not a particularly high standard, which is where I was going. If probable cause is a fair probability, then let's look at the facts that we had here. They aren't within arrest warrant for Mr. Young, not Ms. Davis. Can I step back? I know that's the government's position. It may, in fact, be correct. But is there any real need in the law for us, in this case, to take a position on that question? Not in this case, Your Honor. I don't think so. So the facts here were that agents had recently interviewed Davidson and learned that she had been dating Young at some point for approximately only one month. They went to her Howe Street apartment, found either Webster there, it appears, or nobody there. It's not clear. It's not massively confusing by any means, but they then proceeded because Webster, I'm sorry, Davidson had said not only that Young had given her a gun and had a gun, but also that he sometimes stayed at, Davidson said, Young sometimes stayed at Webster's Ash Street apartment with Davidson as well. So the agents logically went to Webster's Ash Street apartment. What's unclear is whether Webster was there or back at Howe Street. They found no one there. Well, they didn't find Young and they didn't find Davidson. They then proceeded to, they remembered a recent investigation where they had learned and found Young at Crystal's apartment during execution of a search warrant. They went to talk to Crystal, which is what people do, officers, when they don't have a certain address. They knock on doors and talk to prior addresses. Crystal had a new boyfriend at that point, and Young was not there. The agents then went back to talk to Webster again back at Howe Street. And at that point, Webster said, if he's not at the other three, he must be back with his former girlfriend, Jen. Ms. Bonker, what evidence is in the record as to Webster's firsthand knowledge of that? There's nothing that I recall from the record that says that she saw him there, that she talked to him or her. What is the foundation for her saying that? I think that record is not clear on that, Judge Thompson. They seem to have a longstanding relationship with Webster, and at times I notice Agent Rostrom is calling her a CS, a source. But it is not clear whether she had personally been there. She then described the Webster street apartment. Isn't it because of Webster's information that they then went to the final place? Walnut. I just needed to look that up as well. It's not the Webster, it's Walnut Street apartment. I'm sorry. So it was because of Webster's tip, though, that they went to where they eventually found him. That's correct. And so we focused on the information that she gave to see if it was sufficiently detailed enough and whether she had personal knowledge to support the information being reliable. That's correct. And I could not find in the record a basis for her, this tip, except that the agents seemed to have a prior relationship with Webster as well as some of these other folks. In fact, she said it was Jen. She didn't mention Coleman. They went to the Walnut Street apartment, which Webster described very well, so they readily located that. That's when Agent Rostrom noticed Jen Coleman's car in the parking lot, partly corroborating Webster's report. And that's when Rob Rostrom and both Michaud have a history with Jen Coleman and Mr. Young, and both testified that they had previously knew that Young and Coleman were living. Michaud called it a longstanding off-and-on-again relationship since 2011, I think he said. Would it have justified entry in any of his prior girlfriends' apartments just because at some point he had a relationship with any number of people? No, but they had more than that with Webster's tip and this corroboration. But we don't have any basis for where she got that information. I mean, there's nothing in the record that suggests why that should be reliable information. I think what there is no, I'm not aware of anything that says Webster reported in the record, anyway, that she said, I've been there last Thursday. Yeah, I saw it. However, as the lower court found, the other indicia of reliability, that she's meeting face-to-face with these agents and presumably would have been able to be held accountable for outright lying or sending them off on a blue chase. She says that he must be back with this old girlfriend and that back then he used to stay with her a couple nights. Here and there, right? She doesn't say, oh, he's staying with her now. She does say something more similar to the second scenario. She says here and there. No, he's staying with her off and on two to four weeks a night, I think. That's back then. No, it sounded, it was back then. Then she must have some knowledge that they have the relationship. I thought that her statement was that if he's not with these other people, he must be back with her, and then she's reporting what the nature of their relationship was back then. I have the quote down. If you check those three, then he has to be back with his former girlfriend, Jen, she added. She described the address, and then she said it had to be, it had been on and off again a couple nights here and there. It had been. And when he wasn't with Davidson and he gets back. That's what I'm saying, Louie. He must be back with her, and then she describes that back then he stayed a couple nights here or there. She doesn't even represent that if he's back with her, he's now living with her. I think the record could be interpreted as the lower court did, that she was saying that he must be staying with her now. And having ruled out, going back to Judge Lynch's comment, having ruled out the other places, including Davidson's House Street twice, they then reasonably, with Webster's additional information, went and then confirmed that her car is there. It's 11 p.m. So tell me the language that you think shows that she's representing and that without any knowledge of why she's saying that, that we now know the nature of his relationship with her at present. What in the quote is giving you that conclusion? Well, Agent Michaud testified that he knew about this longstanding on-and-off-again relationship, and Ross from two knew about the relationship. Then Webster commented that if you have looked at those other three places, then he has to be back with Jen. Meaning, unlike where he's, I think, a reasonable interpretation of the record and that statement, as quoted by Rostam, I think, in his testimony, it was that it was then and now. You just ruled out the other places, Davidson's apartment twice, it's 11 o'clock, that he must be back with her now. That's the phrase, and then it's reasonably regarded as residing. I added the now of what I tried to quote. I hope I got it correct from Rostam's. He must be back with Jen, and then she says it had been that she was staying there a night or so. What was it? Yes, he added that they, I don't have that. I have the had been, not in quotes, so I don't want to. Okay. But she never testified that she had been. No, that it had been on and off again, which is consistent with Michaud's and Rostam's testimony. It had been on again, I'm sorry, had been on and off again a couple nights here and there when he wasn't with Davidson. Okay, and can I, is the government's vision that a couple nights here or there counts as residence? It depends. These are so fact. Depends on what? Well, there is at least one case we cited where two to four nights was sufficient, and I think some of the other cases, risks, the Eighth Circuit case we cite, has some pretty good discussions that for this patent, for Fourth Amendment analysis purposes, people can logically have more than. I'm just trying to get a sense of a couple nights here or there. The government's position is that counts as residence. I think armed with the additional information. Which is what? Which is Michaud's and Rostam's each independently have knowledge that Young and Coleman have over the course of quite some time had this long standing off-again-on-again relationship. Webster's statements could confirm. If I understand the record, they have knowledge of a long-standing relationship in which what we know about the content of that relationship is he spends a couple nights here or there. And if he's not with. I think that's fair. Okay, so is spending a couple nights here or there with your girlfriend make you a girlfriend's house in the government's view? Not necessarily, but it could. So what else would you need to know? And what do we have in this record that would suggest there was more here? If officers knew that every Monday and Wednesday, I mean, it would depend on. Right, but we don't know that here. That's I guess what I'm asking. So why from this record would it be reasonable to draw from that conclusion that he wasn't just occasionally staying with her in some random sense, but that he was a resident of her apartment? Because, again, I think it's the totality of the circumstances. They had searched to the other. We don't know if they went into the other places. That's just Mr. McCall's statements. But they had ruled out Davidson's place, and they had confirmed, again, with Webster that he's back with Jen. And then they corroborate that with their own knowledge for at least several years that Bermesha took it back to 2011. They know that Mr. Young and Ms. Coleman have this on-again, off-again relationship. I think they could reasonably believe that it was on again. And in terms of whether it's two to four nights, I think the cases are clear that for this patent analysis, he doesn't have to own the place. He doesn't have to live there all of the time. Yes, Judge Barron's question raised something I was wondering about, which is ultimately the question is whether there was a violation of the Fourth Amendment for them based on these clues to enter that apartment. Do you read the Supreme Court case law as making it unreasonable, if they have a reasonable basis, to believe he's there, that it is or is not a residence? The Supreme Court language derives from cases in which there was a residence. Here, maybe he was residing with her. Maybe he wasn't. We have no idea the duration of it. But do you read the Supreme Court case law as making the search illegal because he was not resident? He had less privacy interests in being there? I think I know where you're getting at. If the officers had a reasonable belief under the patent analysis and they go in and they're wrong, I think that's one step. No, I think they go in and they're right. It's just that it isn't a residence. Then that means they're wrong, right? Does that mean we should suppress the evidence? No. As long as they had a reasonable belief, just like with probable cause, agents could have probable cause to stop the vehicle and be right about it. I'm sorry, they could have probable cause stop the vehicle and there are no drugs, they were wrong. And that person wasn't. I'm probably contorting this far beyond it. But as long as the agents had a reasonable belief on those two prongs to believe he lived there, whether he actually lived there. I think Judge Lentz is asking you, some circuits seem to have held that if it's not your own residence, you can't really bring the objection of a patent kind, because in patent we were dealing with somebody who was in his own house. The government seems to be arguing, our cases have seemed to proceed on the assumption that whether you're resident or not, the government has to prove that the government had a reasonable belief as to both residence and presence. I couldn't tell from your brief whether you're meaning to suggest you don't have to prove a reasonable belief as to residency or not. It seemed like you were not challenging that you had to make an argument that there was a reasonable belief as to residence in order for the evidence to be usable. Correct. Under patent the agents had to have a reason, I don't have to use those magic words, but they had to have a reasonable belief that he was living there and would be present. At that time. So you think both things, if you don't have both things satisfied here, the evidence has to be suppressed. I think it depends. Under patent that's the threshold, getting to hear whether he actually lives there. I don't think Stiegel, if the agents had reasonable belief and find themselves in a third party's home and they were just wrong, I don't think they have violated the law, but that's where Stiegel can kick in in terms of what other showings. Can the defendant assert that the evidence needs to be excluded because the government did not have a reasonable belief it was his residence when he in fact was not a resident? He, in the government's view, he would have to, it would depend, he would have to establish some sense of a reasonable expectation of privacy. Okay, assuming he could show a reasonable expectation of privacy because he was an overnight guest, can he then assert that you have to suppress the evidence because the government lacked a reasonable belief he was a resident, even if he was not a resident? Yes, I don't think there's any sort of automatic standing, but if, because somebody could be in a location and be a squatter or be there just on one transaction, but yes, if the defendant could establish a reasonable expectation of privacy. And none of this has been briefed to us. We're pressing much further than the record in the case allows. So we have to think about the consequences of our decision, but I'm not certain it's necessary to get into this to resolve this case. Thank you. Thank you. The court is adjourned.